IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 10-cv-01679-MSK-BNB

MICHAEL JAMES CHIPMAN,

      Plaintiff,

v.

NANCY WHITE,
JOANN STOCK,
BARRY JOHNSON, and
ALL EMPLOYEES OR CONTRACTORS OF STERLING
      CORRECTIONS [sic] FACILITY,

      Defendants.

---

## OPINION AND ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT

---

**THIS MATTER** comes before the Court on the Motions for Summary Judgment filed by Defendants (**#21, 22, & 23**), to which Plaintiff Michael James Chipman responded (**#26**), and Defendants replied (**#28**). Also at issue is the Defendants' Motion to Strike (**#25**), seeking to strike Mr. Chipman's proffered Second Amended Complaint, to which Mr. Chipman responded (**#26**) and Defendants replied (**#27**). Having considered the same, the Court **FINDS** and **CONCLUDES** the following.

### I.   Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983.

## II.   Background

Mr. Chipman is an incarcerated state prisoner.  He asserts a number of claims[1] based on the conditions of his confinement, particularly with respect to the treatment of his diabetes and other medical conditions, at the Colorado Department of Corrections ("CDOC") facility in Sterling, Colorado.  In his Amended Prisoner Complaint (#**5**), he asserts the following specific claims: (1) that on two occasions Defendant Nancy White, a nurse at the Sterling facility, failed to provide him with appropriate diabetes care[2]; (2) that Defendant Joann Stock, a physicians' assistant, determined that he did not need certain accommodations (including special shoes, an "accessible sleeping place" and cane); and (3) that Defendant Barry Johnson, a correctional officer at the facility, refused Mr. Chipman's request to be housed with a particular cellmate and also assigned Mr. Chipman to a small cell and an upper bunk.

In his brief responding to Defendants' motions, Mr. Chipman does not provide any evidence in the form of documents, affidavits, or otherwise.  He states only that certain witnesses, if called to testify, would contradict some of the statements in Defendants' affidavits.

---

[1] The Court is mindful that Mr. Chipman is proceeding *pro se* and, therefore, the Court construes Mr. Chipman's pleadings liberally and holds Mr. Chipman to a "less stringent standard" than pleadings drafted by lawyers in accordance with *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  Such liberal construction is intended merely to overlook technical formatting errors, poor writing style, and other defects in the party's use of legal terminology, citation, and theories.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  The Court, however, cannot act as a *pro se* litigant's legal advocate, and a *pro se* plaintiff retains the burden to allege sufficient facts to state a viable claim.  Furthermore, *pro se* status does not relieve a party of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court must apply the same standard to counsel licensed to practice law and to a *pro se* party.  *See McNeil v. United States*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

[2] He also generally asserts that other employees at the facility have failed to appropriately treat his diabetes.

This is not admissible evidence and is not sufficient to create a genuine issue of material fact. Nonetheless, Mr. Chipman's Amended Complaint contains a declaration under penalty of perjury that the statements contained therein are true and correct. Accordingly, to the extent that the information in Mr. Chipman's Amended Complaint appear to be based on personal knowledge, the Court will treat the Amended Complaint as an affidavit and consider it as evidence in support of Mr. Chipman's claims for relief. Construing the evidence pertaining to each claim most favorably to Mr. Chipman, for purposes of this motion, the Court finds as follows.

**1.      Failure to Provide Diabetes Treatment**

Mr. Chipman was a diabetic prior to incarceration at CDOC in August 2002. Mr. Chipman was admitted back into CDOC in April 2008,[3] where he was medically screened. Documentation was signed at that time confirming that Mr. Chipman was diabetic and entitled to treatment. Mr. Chipman was transferred to the Sterling facility in May 2008; at that time, he was taking oral medication to control his diabetes, and was not taking insulin.

Mr. Chipman was transferred to another correctional facility in June 2008. In August 2008, in response to high blood sugar levels, the medical provider at that facility prescribed insulin. However, the records indicate that on November 17, 2008, Mr. Chipman stated that he would refuse insulin going forward; the prescription was therefore discontinued.

Mr. Chipman was transferred back to the Sterling facility on October 22, 2009. His intake chart was reviewed on October 27, 2009, where it was noted that he was taking only oral

---

[3]It is unclear where Mr. Chipman was prior to this time, but the records demonstrate that he was incarcerated at CDOC at some point before May 2008.

3

medications for his diabetes and did not have a prescription for insulin.  Mr. Chipman states that on December 20, 2009,[4] his blood sugar level was 409 and he requested insulin from Ms. White but she refused to provide it.  Ms. White, a nurse, did not have authority to write prescriptions and could not have given Mr. Chipman insulin on that date because there was no current insulin prescription for him.

Thereafter, in response to several requests for medical assistance, Mr. Chipman was evaluated on January 22, 2010, by a physician, Dr. Fortunato, for diabetes control.  Dr. Fortunato recommended physical activity and attention to diet and, if needed, insulin.  Six days later, on January 28, 2010, Mr. Chipman was evaluated by Ms. Stock, who prescribed insulin and changed Mr. Chipman's other medications.  Mr. Chipman was seen for two follow-up examinations in February 2010 and his insulin prescription was adjusted.

Mr. Chipman's claim is also based on his statement that on February 10, 2010 he was given insulin but then required to wait in the medical unit for over one hour without being allowed access to food.  He contends that Ms. White "was indifferent to plaintiff's request for normal procedure to be followed."  At the time, Mr. Chipman was assigned to work in the kitchen; accordingly, he was scheduled to go to the medical clinic at 10:15 a.m. for his daily blood sugar test and insulin, and then proceed to the kitchen for food and to begin work.  In March 2010,  Mr. Chipman told medical staff that he was not working in the kitchen any more and was going to the medical clinic at noon to get his blood test and insulin.  He then went to the kitchen late, claiming that he was late because the medical clinic would not give him his insulin

---

[4]Mr. Chipman's Amended Complaint alleges this incident occurred on December 20, 2010 but the parties agree this was a misstatement and that the correct date is December 20, 2009.

any earlier.  Mr. Chipman and all relevant staff were advised of the correct procedure.

### 2.   Mobility Evaluation

Mr. Chipman's second claim for relief appears to be based on Ms. Stock's role in the denial of a grievance submitted in March 2010 in which he requested certain accommodations, including special shoes, a lower bunk, and a cane.

It appears to be undisputed that Mr. Chipman suffered injuries to his back while incarcerated at CDOC in 2004.  In December 2009, he submitted a request for an accommodation pursuant to the Americans with Disabilities Act ("ADA"), seeking unspecified accommodations and modifications at the Sterling facility.  As a result, Ms. Stock conducted physical examinations and evaluations on January 21, 2010 and on February 4, 2010.  Based on these examinations, she opined that Mr. Chipman did not have a mobility disability and that he had "adequate strength to be able to access all parts of the facility without any need for accommodations." **#22-4** at 11.  Dr. Paula Frantz, Chief Medical Officer for CDOC, reviewed Ms. Stock's evaluation and agreed with the analysis.  Accordingly, she confirmed that Mr. Chipman did not have a mobility disability and was not entitled to accommodations.  Mr. Chipman's grievances and requests for shoes and a cane were denied based on the medical determinations that he did have a mobility disability.

### 3.   Housing Assignments

Mr. Chipman's third claim is asserted against Defendant Johnson, who was the Housing Sergeant at the Sterling facility during the relevant time period, and is based on Mr. Chipman's cell assignments.  First, Mr. Chipman states that the prisoner with whom he was housed was sent away for medical reasons for two weeks in July 2010; despite assurances that the cellmate would

be reassigned to Mr. Chipman's cell he was not.  In addition, Mr. Chipman contends that he was assigned to a cell that was too small for him to be able to do his exercises and that he had to use the upper bunk.

Bunk restriction determinations are made by medical staff and not by the Housing Sergeant.  In addition, Sergeant Johnson avers in an affidavit that Mr. Chipman was placed in a standard sized double occupancy cell while at the Sterling facility.  Sergeant Johnson also states that inmates are housed based on bed availability and while he attempts to accommodate requests, he cannot guarantee where any inmate will be placed.

### III.  Standard of Review

The Defendants move for summary judgment on several grounds, including (1) Mr. Chipman did not exhaust his administrative remedies; (2) Mr. Chipman cannot make a prima facie showing of a constitutional violation or violation of the ADA; (3) Eleventh Amendment immunity (to the extent the claims are asserted against the Defendants in their official capacities); and (4) qualified immunity (to the extent the claims are asserted against the Defendants in their individual capacities).  Because determination of the first two issues is dispositive of Mr. Chipman's claims, the immunity issues are not addressed.

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Substantive law governs what facts are material and what issues must be determined.  It also specifies the elements that

must be proved for a given claim or defense, sets the standard of proof and identifies the party

with the burden of proof.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986);

*Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  A factual

dispute is "genuine" and summary judgment is precluded if the evidence presented in support of

and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter

for either party.  *See Anderson*, 477 U.S. at 248.  When considering a summary judgment

motion, a court views all evidence in the light most favorable to the non-moving party, thereby

favoring the right to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir.

2002).

     When the movant has the burden of proof on a claim or defense, the movant must

establish every element of its claim or defense by sufficient, competent evidence.  *See* Fed. R.

Civ. P. 56(e).  Once the moving party has met its burden, to avoid summary judgment the

responding party must present sufficient, competent, contradictory evidence to establish a

genuine factual dispute.  *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th

Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).  If there is a genuine

dispute as to a material fact, a trial is required.  If there is no genuine dispute as to any material

fact, no trial is required.  The court then applies the law to the undisputed facts and enters

judgment.

     When the moving party does not have the burden of proof at trial, it must point to an

absence of sufficient evidence to establish the claim or defense that the non-movant is obligated

to prove.  If the respondent comes forward with sufficient competent evidence to establish a

*prima facie* claim or defense, a trial is required.  If the respondent fails to produce sufficient

competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## V.  Analysis

### A.      Failure to Exhaust

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that a prisoner exhaust all available administrative remedies prior to filing an action regarding prison conditions in federal court.  Demonstration of exhaustion, however, is not a pleading requirement, but instead is an affirmative defense.  *See Roberts v. Barreras*, 484 F.3d 1236, 1240-41 (10th Cir.2007) (*discussing Jones v. Bock*, 549 U.S. 199 (2007)).  To exhaust administrative remedies in the prison system, an inmate must properly follow all of the steps enumerated in the prison systems grievance procedure, regardless of whether he or she views the administrative procedure as futile.  *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  A prisoner who begins the grievance process, but does not complete it has not exhausted his administrative remedies and is barred from bringing suit. *See Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).

Sergeant Johnson asserts that Mr. Chipman failed to exhaust his administrative remedies with regard to his claim related to cell assignments.  Sergeant Johnson has provided evidence regarding CDOC's grievance procedures and an affidavit regarding CDOC's record of grievances filed by Mr. Chipman showing that no grievances were filed by Mr. Chipman with respect to his cell assignments or cellmate assignments.  Based on this evidence, Sergeant Johnson has satisfied his preliminary burden to show that Mr. Chipman did not exhaust his claims based on these issues.

The burden then shifts to Mr. Chipman to show that he filed grievances and took such other appropriate actions as required to exhaust his administrative rights.  Mr. Chipman did not respond to this issue in his response brief, nor has he provided any evidence to show that he has exhausted his administrative remedies as to these issues.  Therefore, Mr. Chipman's claims based on his housing assignment or cellmate assignments are barred.

Ms. White also asserts failure to exhaust as a defense.  She provides evidence from CDOC's records that although Mr. Chipman filed a Step 1 grievance[5] regarding the treatment of his diabetes, he did not assert that he had been denied insulin or food by Ms. White.  The records also show that Mr. Chipman never filed a Step 2 or Step 3 grievance and therefore did not exhaust his claims in this regard.  Again, Mr. Chipman did not respond to this issue or provide evidence regarding his exhaustion of administrative remedies.  Therefore, Mr. Chipman's claims against Ms. White have not been exhausted and are barred.

## B.     Eighth Amendment

As the plaintiff in this case, Mr. Chipman has the burden to establish by a preponderance of the evidence the elements of his claims asserted pursuant to the Eighth Amendment.  The relevant law is as follows.

The Eighth Amendment requires jail officials "to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmate's safety." *Barney v. Pulsipher*, 153 F.3d 1299, 1310 (10th Cir. 1998).  It is well established that prison officials

---

[5]CDOC uses a three-step grievance process, which is set forth in its administrative regulations.

violate the Eighth Amendment if their "deliberate indifference to serious medical needs of

prisoners constitutes the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429

U.S. 97, 104 (1976) (internal quotation marks omitted).  However, a claim based on "an

inadvertent failure to provide adequate medical care" or alleging "that a physician has been

negligent in diagnosing or treating a medical condition" does not state a valid claim of medical

mistreatment under the Eighth Amendment. *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th

Cir. 2006) (citations omitted). "Rather, 'a prisoner must allege acts or omissions sufficiently

harmful to evidence deliberate indifference to serious medical needs.'" *Self v. Crum*, 439 F.3d

1227, 1230 (10th Cir. 2006) (quoting *Estelle*, 429 U.S. at 106).

To demonstrate an Eighth Amendment violation, an inmate must satisfy both objective

and subjective elements.  The objective component is met if the deprivation is "sufficiently

serious," i.e., one that "has been diagnosed by a physician as mandating treatment or . . . is so

obvious that even a lay person would easily recognize the necessity for a doctor's attention."

*Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (quoting *Hunt v. Uphoff*, 199 F.3d

1220, 1224 (10th Cir. 1999)).  Delay in providing medical care can also support an Eighth

Amendment claim, if the plaintiff can show that the delay resulted in substantial harm. *Id*. at

1276.  That substantial harm can be the ultimate physical injury caused by the prisoner's illness

or condition or an intermediate injury, such as the pain experienced while waiting for treatment.

*Kikumura*, 461 F.3d at 1292.

The subjective component of the deliberate indifference test is met if the defendant

"knows of and disregards an excessive risk to inmate health or safety."  *Sealock v. Colorado*,

218 F.3d 1205, 1209 (10th Cir. 2000).  A prison medical professional who  "knows that his role

in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition" may be held liable under the deliberate indifference standard if that person delays or refuses to fulfill that gatekeeper role. *Id.* at 1211. "Deliberate indifference" does not require a showing of express intent to harm, rather, it is enough that the official acted or failed to act despite his or her knowledge of a substantial risk of serious harm. *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005) (citations omitted).

Assuming that diabetes constitutes a serious medical condition, Mr. Chipman has failed to come forward with any evidence that would establish that any Defendant was deliberately indifferent to it or to its treatment. His statement that Ms. White should have given him insulin when it had not been prescribed at most shows that he desired different treatment than he received. A disagreement about treatment is insufficient to establish deliberate indifference. *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir.1999) ("a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation."). He has shown no serious harm that resulted or could have resulted from the denial of the insulin injection. Similarly, Mr. Chipman's assertion that on one occasion he had to wait one hour for food after receiving insulin also does not demonstrate an excessive risk to his health or safety, much less that any individual employee knew of and disregarded such a risk.

With respect to his requests for mobility accommodations, Mr. Chipman has not come forward with any evidence, at all. The only evidence as to Mr. Chipman's current physical condition comes from Defendants, and it shows that he does not have any limitations on his strength or movement. Even if his prior injuries and any residual pain he feels are considered to be a serious medical condition, there is no showing of deliberate indifference. In response to his

11

request for accommodations, he was given two physical examinations and an evaluation was performed and reviewed.  Mr. Chipman's mere disagreement about the diagnosis reached, without more, is insufficient to establish this element of the claim.

### C.    ADA and Rehabilitation Act

Mr. Chipman may also be attempting to assert claims under the ADA and Rehabilitation Act.  Again, as the plaintiff, he bears the burden of proof to establish a *prima facie* case.

Title II of the ADA prohibits discrimination against the disabled by public entities.  42 U.S.C. § 12132.  In order to state a Title II claim, a plaintiff must demonstrate that he or she is a qualified individual with a disability; he or she was excluded from participation or denied the benefits of a public entity's services, programs, or activities; and such exclusion, denial of benefits, or discrimination was because of the individual's disability.  *Robertson v. Las Animas County Sheriff's Dept.*, 500 F.3d 1185, 1993 (10th Cir. 2007).  Section 504 of the Rehabilitation Act prohibits discrimination against the disabled by recipients of federal funding.  29 U.S.C. § 794(b)(3).  To establish a *prima facie* case of discrimination under the Rehabilitation Act, a plaintiff must demonstrate that he or she is handicapped under the act, is otherwise qualified to participate in the program, the program receives federal financial assistance, and the program discriminates against the plaintiff.  *Barber ex rel. Barber v. Colo. Dept. Of Revenue*, 562 F.3d 122, 1228 (10th Cir. 2009).

Under the ADA, a disability is defined as (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.  42 U.S.C. § 12102(1).  A plaintiff must "articulate with precision" both his impairment and the major life activity it

substantially limits.  *Johnson v. Weld County, Colorado*, 594 F.3d 1202, 1218 (10th Cir . 2010).

Giving Mr. Chipman's Amended Complaint a liberal construction, he may be asserting that he is disabled due to his diabetes and his prior injuries.  He offers no evidence or argument, however, to show that either of these impairments substantially limits any of his major life activities; he therefore does not show any issue of material fact with respect to the Defendants' evidence that a medical evaluation determined he has adequate strength and mobility to access all parts of the facility.  Similarly, he provides no evidence that his diabetes substantially limits him in any major life activity.

In addition, Mr. Chipman offers no evidence to show that he has been discriminated against or denied benefits based on his alleged disability.  He has not identified any activities that he has allegedly been prevented from participating in as a result of being denied the accommodations he requested.

Because Mr. Chipman has failed to exhaust and/or has not come forward with evidence to establish a *prima facie* claim, the motions for summary judgment are granted.

### D.    Motion to Strike

After the motions for summary judgment were filed, Mr. Chipman  filed a document entitled  Second Amended Complaint (#**24**), in which he sought to add a fourth defendant and a fourth claim for relief.  Mr. Chipman did not seek leave to amend his Complaint pursuant to Fed. R. Civ. P. 15.  Defendants seek to strike the Amended Complaint on the grounds that Mr. Chipman is not permitted to file an amended pleading as a matter of right because the parties have already responded and the deadline for amendments has passed.  He must therefore obtain the consent of the Defendants or leave from the Court to file a Second Amended Complaint.

In response, Mr. Chipman states that he informed the Court at a scheduling conference that he intended to add the fourth Defendant as soon as he completed his administrative remedies and that "[i]t would be most efficient to try all these issues concerning a single prison in one trial."

The Motion to Strike will be granted.  The record does not show that Mr. Chipman was granted leave to amend his complaint without filing a motion under Fed. R. Civ. P. 15.  As noted by Defendants, Mr. Chipman is not entitled to amend his complaint as a matter of course but rather, in the absence of consent from the Defendants, must file a motion for leave to amend.  No such motion has been filed, even after the Defendants' Motion to Strike gave Mr. Chipman notice of the requirements of Rule 15.  Moreover, as discussed above, the claims against the existing Defendants do not survive summary judgment and continuing the case despite this determination will cause them prejudice.  The fourth claim against the fourth Defendant is unrelated to the claims asserted in the previous Amended Complaint and can be asserted in new litigation.

**IT IS THEREFORE ORDERED** that

(1)     The Motions for Summary Judgment filed by Defendants (#**21, 22, & 23**) are

**GRANTED.**  The Clerk of the Court shall enter judgment in favor of Defendants and against Plaintiff on all claims.  Defendants may have their costs.

14

    (2)    Defendants' Motion to Strike (**#25**) is **GRANTED**.

Dated this 18th day of October, 2011

**BY THE COURT:**

Marcia S. Krieger
United States District Judge